UNITED STATES of America

v.

STATE OF LOUISIANA et al.

Civ. A. No. 80–3300.

United States District Court,
E. D. Louisiana.

May 26, 1981.

Thomas W. Milliner and Alan F. Schoenberger, New Orleans, La., for proposed intervenors Gladys W. Milliner, et al.

Howard L. Sribnick, Nathaniel Douglas and Thomas M. Keeling, Dept. of Justice, Washington, D. C., for United States.

Mack E. Barham, Ralph S. Hubbard, III and Marie O. Riccio, Barham & Churchill, New Orleans, La., for Louisiana Bd. of Regents.

Paul Ferlita, Asst. Atty. Gen., New Orleans, La., for State of Louisiana.

Martin L. C. Feldman and Robert Kutcher, Bronfin, Heller, Feldman & Steinberg, New Orleans, La., for Bd. of Trustees for State Colleges and Universities.

W. S. McKenzie and Nancy C. Tyler, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for Louisiana State University Bd. of Supervisors.

Benjamin Jones and Charles D. Jones, Jones, Jones & Jones, Monroe, La., for Southern University Bd. of Supervisors.

Before WISDOM, Circuit Judge, and SCHWARTZ and WICKER, District Judges.

CHARLES SCHWARTZ, Jr., District Judge.

Gladys W. Milliner, a professor and the chairman of the English Department at Southern University in New Orleans, seeks to intervene of right in this litigation individually and as the representative of the class of Southern faculty members. As her basis for such intervention, Professor Milliner alleges that faculty members at predominantly black Southern (hereafter SUNO) and at the predominantly white University of New Orleans (hereafter UNO) labor under dramatically different policies which constitute "serious inequities" with respect to the SUNO faculty. The specific factual allegations include heavier minimum teaching loads (historically fifteen hours per term at SUNO and nine—for full and associate professors—or twelve hours at UNO), lower pay for hours taught in excess of such (varying) minimum requirements, a less attractive sabbatical policy, and a higher number (200% and more) of required office hours per week. Professor Milliner alleges that the sole and proximate cause of such variations between treatment of faculty at the two schools is "the racially dual system of public higher education operated by defendant State of Louisiana."

In order to qualify for intervention as of right under Federal Rule of Civil Procedure 24(a)(2), as sought by Professor Milliner, one must show four separate facts:

1) the motion to intervene must be timely;

2) the movant must have an interest in the subject matter of the litigation;

3) the movant must show that the disposition of the action may as a practical matter impair or impede her ability to protect that interest; and

4) that her interest is not adequately represented by those already party to the litigation.[1]

We note initially that Professor Milliner does have an interest in this litigation and that her petition to intervene does raise issues which are germane to any final disposition of the case. It is the understanding of the Court, however, that the inequitable situations which she alleges are part of the plenary consideration which the existing parties are now giving the entire system of public higher education in Louisiana. In its memorandum opposing this intervention, the United States stated that it has engaged an expert for the specific purpose of investigating inequities among faculties in Louisiana colleges and universities and that

---

1. A somewhat fuller review of the authorities relating to the application of these criteria may be found in this Court's decision, released today, denying the petition to intervene filed by Trevor Brown, et al. seeking to represent the class of Blacks in Louisiana. D.C., 90 F.R.D. 358.

it intends to address fully the problems of which Professor Milliner complains to the extent that those are vestiges of a dual system of public higher education.

In their supplemental memorandum in support of intervention, counsel for Professor Milliner and the group she seeks to represent declare that their not being allowed to intervene at this juncture may impair their interests "through *stare decisis* or [may impede them] through the necessity of having to bring another suit." In light of both the assurance of the United States that it is cognizant of and intends to be satisfied with respect to the issues raised in the petition for intervention and the fact that at least one party defendant has previously raised equalization of faculty salaries across the state as a threshold issue in this case, the Court is not convinced that Professor Milliner's fears that her interests, and those of the class she seeks to represent, are not being and will not be fully and adequately represented by counsel for the United States, the plaintiff demanding that vestiges of Louisiana's dual system of higher education be eradicated, and by counsel for SUNO and other predominantly black schools, who are unlikely to ignore the needs and rights of the faculty of the schools they represent. Even if, *mirabile dictu*, such interests were ignored in the progress of this case, Professor Milliner acknowledges that her rights could be vindicated through bringing a second, separate lawsuit. Thus, the Court cannot find that the movant here has interests which are not susceptible to remedy outside this particular case, should she be dissatisfied with its outcome, or that the outcome of this case has any real potential for practically impairing or impeding her ability to protect her interests.

Finally, there is serious question as to the timeliness of the motion to intervene. Professor Milliner has been a faculty member at SUNO since 1969. This action was filed in 1974. The facts alleged in the petition for intervention are ones primarily in the public domain, now and throughout the time through which the course of this litigation has run. Thus, it appears that the movant could reasonably have been expected to have known of her interest in this case at some point before the passing of seven years. As already set forth, there stands to be particularly little prejudice to the movant if she is not allowed to intervene at this point, and there are at this time no unusual circumstances which militate in favor of intervention. *See Stallworth v. Monsanto Corp.*, 558 F.2d 257 (5th Cir. 1977).

Further, the parties are at this time engaged in complicated negotiations seeking to reach an end to this case satisfactory to all. To allow intervention at this juncture would unavoidably inhibit the potential efficacy of these talks. *See United States v. City of Jackson*, 519 F.2d 1147, 1151 (5th Cir. 1975); *Wooten v. Moore*, 42 F.R.D. 236, 242 (E.D.N.C.1967), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969). The Court in a similar vein also denies today a petition to intervene brought by citizens who seek to represent the interests of Louisiana Blacks.

For the reasons outlined above, the petition of Gladys W. Milliner et al. to intervene as of right in this litigation is DENIED. Because the Court recognizes that she has articulated interests cognizable within the parameters of this case, however, she is reserved the right to reurge her motion to intervene at some later date should she at that time be able to show in some concrete way that her interests and those of the class which she seeks to represent are not being adequately represented by the existing parties in the litigation. In the meanwhile, she is of course free to file such *amicus curiae* briefs as she feels appropriate to keep the parties apprised of her position, and the Court encourages her to do so.